UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| DAVID LITTLE and RUTH ANN LITTLE, as parents and next of kin to TYLER LITTLE, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MORRISTOWN, TENNESSEE, et al., <br><br> Defendants. | 2:21-CV-00047-DCLC-CRW |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motions to exclude the testimony of Plaintiffs' rebuttal expert, Dr. Sophia Khan [Docs. 51, 57] and Defendants' motions to exclude the testimony of Plaintiffs' law enforcement expert, William Harmening [Docs. 55, 58].

**I.     BACKGROUND**

Plaintiffs David Little and Ruth Ann Little initiated this civil rights and wrongful death action against the City of Morristown, Tennessee, the Chief of the Morristown Police Department ("MPD"), two MPD Officers, Hamblen County, Tennessee, the Hamblen County Sheriff, and various Hamblen County Jail officials following the death of their son, Tyler Little, who was arrested for suspected DUI by MPD Officer Devon Gillett, taken to the hospital for a blood draw, and transported to the Hamblen County Jail, where he died hours later from an overdose. Pursuant to 42 U.S.C. § 1983, Plaintiffs allege Fourteenth Amendment violations based on the failure to protect and failure to provide medical care. Plaintiffs also assert state law claims of negligence, wrongful death, and intentional infliction of emotional distress.

1

In support of their claims, Plaintiffs disclosed William M. Harmening ("Mr. Harmening") as a law enforcement expert. Mr. Harmening, a former Jail Administrator and retired law enforcement officer with 37 years of experience, has been providing expert witness services in the areas of police practices and the use of force since 2014 [Doc. 58-2, pg. 1]. Upon review of the facts leading up to Little's death, Mr. Harmening formed the following opinions, as disclosed in his report: (1) "Officers Gillette [sic] and Johnson failed to recognize that Tyler Little was in the throes of a drug overdose and in need of immediate medical intervention" and "any police officer should reasonably have recognized Little's distress and the need for medical care" and (2) Jail "personnel failed to follow established policy and national standards when they chose not to complete an immediate medical evaluation of Little when he entered the jail facility showing obvious symptoms of drug toxicity or withdrawal, and then ignored him for over two hours while he lay on a hallway floor and died" [Doc. 58-1, pg. 12].

Plaintiffs also disclosed Sophia Khan, MD ("Dr. Khan") as a rebuttal expert to Defendants' medical expert, Troy T. Pope, MD, FACEP ("Dr. Pope").[1] Dr. Pope is a board-certified physician who has regularly engaged in the practice of emergency medicine for 17 years [Doc. 57-1]. Likewise, Dr. Khan is a board-certified emergency physician who has also regularly engaged in the practice of emergency medicine for 17 years [Doc. 57-2]. Based upon a review and analysis of the videos, documents, records, and evidence in this matter, both Dr. Pope and Dr. Khan formed opinions regarding Little's need for medical care during the events leading up to his death.

Dr. Pope opines that Little's conduct and appearance were consistent with intoxication; he did not exhibit signs or symptoms of a life-threatening overdose or indicating the need for

---

[1] The "FACEP" designation represents Dr. Pope's status as a Fellow of the American College of Emergency Physicians. ACEP, *Fellow (FACEP) Status*, https://www.acep.org/membership/membership/join-acep/fellow-status/ (last visited on March 12, 2023).

immediate medical care at any time while in the custody of MPD; and his death while at the Jail was most likely the result of a combination of sleep apnea and the medications he ingested [Doc. 57-1, pgs. 2–4]. In contrast, Dr. Khan opines that Little's admission to using prescription narcotic medication together with alcohol warranted further evaluation by a medical provider [Doc. 57-2, pg. 2]. Dr. Khan further elaborates that combining alcohol and prescription medications can be life threatening; Little exhibited signs of overdose while in the custody of MPD, including slurred speech, lethargy, unstable gait, inability to stay awake and alert; the symptoms exhibited could also be linked to other life-threatening conditions such as intracranial bleed, metabolic derangements, and toxic ingestions; given the multiple life-threatening diagnoses and Little's co-ingestion of prescription narcotic medications, further investigation by medical personnel, including obtaining vital signs, obtaining laboratory blood tests and/or a CT scan of the head, were imperative; and intervention at early stages has been found to improve the prognosis and outcomes of these cases [*Id*. at pg. 3].

The City and County Defendants now move to exclude the testimony of Dr. Khan and Mr. Harmening pursuant to Fed.R.Civ.P. 37(c)(1), Fed.R.Evid. 702, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) [Docs. 51, 55, 57, 58].

## II. LEGAL STANDARD

The Supreme Court in *Daubert* held that Fed.R.Evid. 702 requires trial courts to perform a "gatekeeping role" when determining the admissibility of expert testimony. 509 U.S. at 597. Specifically, Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. The rule provides:

> a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702. An expert's opinion may be based "on facts or data in the case that the expert has been made aware of or personally observed." Fed.R.Evid. 703.

These standards apply equally to scientific testimony and other types of expert testimony based on technical or specialized knowledge. *Kumho Tire Co., LTD. V. Carmichael*, 526 U.S. 137, 147–49 (1999). The factors relevant when evaluating the reliability of an expert's testimony include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). The *Daubert* factors "are not dispositive in every case" and should be applied "only where there are reasonable measures of reliability of expert testimony." *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001).

### III.  ANALYSIS

#### A.  William Harmening

The County Defendants assert Mr. Harmening's testimony should be excluded because he lacks any qualifications to give medical testimony [Doc. 56]. Mr. Harmening, however, specified during his deposition that he does not intend to offer any medical opinions in this matter [Doc. 56-1]. Rather, his opinions relate to the reasonableness of the law enforcement and correctional officers' actions. Mr. Harmening's background in law enforcement and corrections certainly qualifies him to render such opinions and his testimony will serve to help the jury determine a fact in issue. *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022) (a requisite element of a failure-to-protect claim is the officer's failure to take reasonable steps to abate a substantial risk of harm, which requires a showing that "a reasonable officer in the circumstances would have

4

appreciated the high degree of risk involve and the obvious consequences of the [officer's] conduct."); *see also Trozzi v. Lake Cnty.*, 29 F.4th 745, 757–58 (6th Cir. 2022) (a requisite element of a claim for failure to provide adequate medical care is that "a reasonable officer at the scene . . . would have understood that the detainee's medical needs subjected [him] to an excessive risk of harm[.]"). Thus, Mr. Harmening's testimony is reliable and relevant, and the County Defendants' motion to exclude his testimony [Doc. 55] is **DENIED**.[2]

As for the City Defendants, they only seek to limit the testimony of Mr. Harmening. Similar to the County Defendants, they first argue Mr. Harmening is not qualified to offer medical opinions or opinions related to causation [Doc. 58, pg. 7]. Plaintiffs acknowledge Mr. Harmening's lack of medical expertise and, therefore, concede the issue [Doc. 70, pg. 10]. The City Defendants also argue certain opinions offered by Mr. Harmening are speculative and must be excluded as unreliable.

First, they take issue with Mr. Harmening's statement in his report that Officers Gillett and Johnson "knew it was not alcohol affecting Little" [Doc. 58-1, pg. 5] and argue that this opinion is based purely on speculation and not on any testimony from the officers [Doc. 58, pg. 7]. Plaintiffs contend this objection goes to the credibility, rather than the admissibility, of Mr.

---

[2] The County Defendants argue Plaintiffs must produce "verifying medical evidence" to support the "overarching theory" that Little would have survived if the law enforcement and correctional officers had intervened medically [Doc. 56, pg. 1]. However, the central issues with respect to Plaintiffs' claim alleging failure to provide adequate medical care are whether a substantial risk of harm existed due to an objectively serious medical condition and whether the officers recklessly disregarded that risk. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). A showing of actual harm is not required. *Id*. "[T]he 'verifying medical evidence' requirement . . . applies where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious." *Id*. at 898. Such requirement "does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Id*. Plaintiffs proceed under the latter theory and, as a result, the County Defendants' argument that Plaintiffs are required to produce verifying medical evidence is misplaced.

5

Harmening's testimony [Doc. 70, pg. 18]. Nonetheless, the state of mind of Officers Gillett and Johnson is subjective and not based upon facts or data in the case. While Mr. Harmening may testify as to his opinion of what Officers Gillett and Johnson *should* have known, any opinion as to their subjective knowledge or state of mind is speculative and must be excluded. *Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 949 (N.D. Ill. 2010) (holding that permitting an expert to testify regarding the state of mind of a defendant "would effectively allow him to substitute his inferences for those that the trier of fact can and should draw on its own.").

Similarly, the City Defendants challenge Mr. Harmening's opinion related to whether Little might have advised officers of other drugs he ingested [Doc. 58, pg. 7]. In his report, when discussing Little's attempt at the hospital to tell Officer Gillett about additional drugs he had taken that were not prescribed to him, Mr. Harmening stated, "It is very possible, and in fact likely given Little's cooperative demeanor, that Little would have told [Gillett] about the Oxymorphone he had taken." [Doc. 58-1, pg. 6]. Like the individual officers' knowledge of whether Little was under the influence of alcohol, Little's intent is subjective. Thus, any opinion on what he specifically would have told Officer Gillett is speculative and inadmissible. While Mr. Harmening may offer an opinion as to the reasonableness of Officer Gillett's actions under the circumstances, he may not substitute his inferences as to what Little would have said for the inferences the jury can draw on its own. *See Hershey*, 697 F. Supp. 2d at 949.

Next, the City Defendants challenge as speculative Mr. Harmening's opinion that Little's eyes were likely dilated or constricted during the initial traffic stop [Doc. 58, pg. 7]. Specifically, Mr. Harmening opined in his report that "while both Gillette [sic] and Johnson failed to properly document their observations in incident reports, it is reasonable to conclude that Little's pupils were noticeably either dilated or constricted beyond normal." [Doc. 58-1, pg. 4]. Plaintiffs assert this opinion is based on the evidence presented to Mr. Harmening and analyzed through his

6

experience with police and correctional practices, policies, customs, and training and, thus, it is neither speculative nor unreliable [Doc. 70, pg. 4].  As this Court has held, "there is a difference between assumption, which is allowed if supported by the record, and speculation, which is not." *Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:07-CV-258, 2009 WL 10674921, at *3 (E.D. Tenn. Feb. 19, 2009).  Mr. Harmening explained that his opinion as to the likely appearance of Little's eyes is "a reasonable conclusion based on the drugs [Little] had ingested and the autopsy report and based on [his] knowledge of working in detox centers, what happens to the pupils when they're under the influence of those particular drugs." [Doc. 58-3, pg. 5].  Because there are factual bases in the record for the assumption underlying Mr. Harmening's opinion regarding the likely appearance of Little's eyes, this testimony is not speculative and, therefore, is admissible.

Finally, the City Defendants argue Mr. Harmening's opinions regarding deficiencies in the search of Little, implied consent issues, the failure to offer *Miranda* warnings, and the handcuffing and manner of transport of Little must be excluded because they are not relevant [Doc. 58, pg. 8]. Mr. Harmening's report notes that Gillett did not inform Little of his *Miranda* rights at any time after arresting him and that Little should not have been placed in the squad car with his hands cuffed behind his back [Doc. 58-1, pgs. 2, 6].  Mr. Harmening further testified in his deposition that Officer Gillett "screwed up with the implied consent" and "by not searching [Little]" [Doc. 58-3, pg. 6].  Mr. Harmening may be qualified to offer these opinions, but they would not help the jury understand the evidence or determine a fact at issue in this matter.  Although "[t]he relevancy bar is low," there is no factual issue in dispute that the foregoing testimony would clarify. *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017).

Based on the foregoing, the City Defendants' motion to exclude the testimony of Mr. Harmening [Doc. 58] is **GRANTED IN PART AND DENIED IN PART**.  Any opinion

7

testimony by Mr. Harmening requiring medical expertise, regarding the subjective knowledge or state of mind of Officers Gillett and Johnson, or the specific intent of Little is excluded as unreliable. Furthermore, any testimony by Mr. Harmening regarding alleged deficiencies in the search of Little, implied consent issues, the failure to offer *Miranda* warnings, and the handcuffing and manner of transport of Little are excluded as irrelevant.

### B.     Sophia Khan

The City and County Defendants also move to exclude or, alternatively, to limit the testimony of Plaintiffs' rebuttal expert, Dr. Khan [Docs. 51, 57]. First, they both assert Plaintiffs' disclosure of Dr. Khan fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B) and, as a result, her testimony must be excluded. Namely, the City Defendants claim neither Dr. Khan's rebuttal report nor her curriculum vitae includes a list of all publications she authored or a list of all cases in which she has testified as an expert [Doc. 57, pg. 8] and the County Defendants assert she "merely makes conclusory statements" in her rebuttal report and does not cite to anything in the record to support or form a basis for her opinion [Doc. 52, pg. 3].

Rule 26(a)(2)(B) governs the disclosure of expert testimony and requires an expert's report to contain certain information, including "a complete statement of all opinions the witness will express and the basis and reasons for them; . . . the witness's qualifications, including a list of all publications authored in the previous 10 years; [and] a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition[.]" Fed.R.Civ.P. 26(a)(2)(B)(i), (iv)–(v). "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a)" and "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citation omitted).

8

At the outset, the Court finds that the absence of a list of publications is substantially justified, because Dr. Khan has not authored any publications in the past ten years [Doc. 73, pg. 11]. As for the failure to list other cases in which she has testified as an expert, Dr. Khan disclosed during her deposition that she has previously been hired as an expert witness in one other case [*Id.*]. In light of this disclosure, the failure to list the case in her report is harmless. *See Vaughn v. City of Lebanon*, 18 F. App'x 252, 264 (6th Cir. 2001) (citation and internal quotations omitted) ("the advisory committee's note to Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.").

Finally, the Court finds that Dr. Khan's report sufficiently states the basis and reasons for her opinions. A report must "include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id*. Upon review of Dr. Khan's report, she stated the reasons supporting her opinions that Little exhibited signs of a life-threatening condition and these signs or symptoms warranted medical intervention [Doc. 52-1, pg. 2]. Specifically, she refers to Little's admission to using both prescription medications and alcohol and his demeanor throughout his interaction with law enforcement—slurred speech, lethargy, unstable gait, and the inability to stay awake and alert—which she states indicated signs of an overdose or various other possible life-threatening conditions [*Id*. at pg. 3]. Thus, the opinions in her report are more than mere "conclusory statements" [Doc. 52, pg. 3]. Based on the foregoing, the Court finds that Dr. Khan's report sufficiently complied with the requirements of Rule 26(a)(2)(B) and, to the extent it did not strictly comply, such failure was harmless and not sanctionable. Accordingly, exclusion of Dr. Khan's testimony in full on this ground is not warranted.

Nonetheless, the City and County Defendants also contend Dr. Khan's report lacks the completeness required by Rule 26(a)(2)(B) because she offered additional opinions during her deposition that were not included in her report [Doc. 52, pg. 4; Doc. 57, pg. 10]. Specifically, they

9

Case 2:21-cv-00047-DCLC-CRW   Document 105   Filed 03/31/23   Page 9 of 12   PageID #: 1789

take issue with any opinions related to the standard of care attributable to police officers or lay persons and any opinions as to causation, i.e., whether Little would still be alive today if medical intervention had been provided. These additional opinions, Defendants assert, should be excluded and Dr. Khan's testimony should be confined to the opinions disclosed in her report [Doc. 52, pgs. 4–5; Doc. 57, pg. 10].

"Under Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir. 1998)). The rule, however, "does not limit an expert's testimony simply to reading [her] report." *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006). Rather, it "contemplates that the expert will supplement, elaborate upon, explain and subject [herself] to cross-examination upon [her] report." *Id*. Thus, so long as an expert does not "testify as to a wholly new, previously unexpressed opinion[,]" such testimony is admissible. *E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1049 (E.D. Tenn. 2015) (citation omitted).

Upon review of the deposition testimony at issue, the Court finds that the opinions Defendants take issue with are not wholly new. Dr. Khan's testimony regarding the standard of care of lay persons is merely an explanation of her opinion that Little exhibited obvious signs of a life-threatening condition warranting medical evaluation [Doc. 57-4, pg. 2] ("I do know that a lay person, whether they be a police officer or a non-police officer, would be able to recognize some of these symptoms and then warrant evaluation.").[3] Her testimony as to how medical intervention

---

[3] The City Defendants also contend any opinion relating to the standard of care of a lay person is irrelevant [Doc. 57, pg. 11]. Nonetheless, whether a lay person would recognize Little's

could have saved Little's life is also an extension of her opinion that "intervention at early stages [has] been found to improve the prognosis and outcomes of these cases." [Doc. 57-2, pg. 3]. This testimony is precisely the type of supplementation and elaboration contemplated by Rule 26. *Thompson*, 470 F.3d at 1203. Accordingly, the Court finds Dr. Khan's report is complete and her deposition testimony is admissible.

As an additional basis for exclusion, the City and County Defendants argue Dr. Khan's opinions do not rebut the disclosed opinions of Dr. Pope [Doc. 52, pg. 3; Doc. 57, pg. 9]. Because Plaintiffs disclosed Dr. Khan as a rebuttal expert, her report must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)[.]" Fed.R.Civ.P. 26(a)(2)(D)(ii). "[R]ebuttal experts cannot exceed the scope of simply responding to the original expert's testimony and opinions." *Tepro, Inc.*, 133 F. Supp. 3d at 1047 (citation and internal quotations omitted).

Upon review of the competing opinions, Dr. Khan's opinions directly rebut those of Dr. Pope. Specifically, Dr. Pope opines that Little did not exhibit signs or symptoms indicating he was suffering from a life-threatening overdose or indicating the need for immediate medical care. In response, Dr. Khan opines Little exhibited signs of a life-threatening overdose or other condition requiring medical intervention. Her opinions as to the obvious nature of Little's need for medical care, what type of medical care was warranted, and how such care could have affected the outcome of the situation are all "intended solely to contradict or rebut evidence on the same subject matter identified by" Dr. Pope, i.e., the objective seriousness of Little's need for medical attention. Accordingly, Dr. Khan's opinions are proper rebuttal and admissible.

---

symptoms as signs of a life-threatening condition is directly relevant to whether Little had an "objectively serious medical need." *See Blackmore*, 390 F.3d at 897 (A pretrial detainee's medical need is objectively serious if it has been diagnosed by a physician as requiring treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

Finally, the County Defendants devote a significant portion of their motion to arguing that Dr. Khan's opinions are based on speculation and "total assumptions" [Doc. 52, pg. 5]. Specifically, they contend Dr. Khan couches her opinions with phrases such as "may have" or "can be" or "could also" and assert what may or could happen is not admissible testimony [Doc. 52, pg. 3]. As stated above, however, "there is a difference between assumption, which is allowed if supported by the record, and speculation, which is not." *Stratienko*, 2009 WL 10674921 at *3. Each of Dr. Khan's assumptions, such as the life-threatening conditions that could be linked to the symptoms Little exhibited and the likelihood, in light of Little's autopsy and toxicology report, that medical intervention could have increased his chance of survival, are supported by specific facts in the record. Despite the fact that "there is no way of knowing whether evaluation by medical personnel would have either revealed an overdose, or that Little could have been successfully treated" [Doc. 52, pgs. 4–5], Dr. Khan may form an opinion on the matter based on assumptions which are supported by the record and informed by her specialized knowledge in the field of emergency medicine. Thus, this testimony is also admissible. Accordingly, the City and County Defendants' motions to exclude the testimony of Dr. Khan [Docs. 51, 57] are **DENIED**.

## IV. CONCLUSION

For the reasons set out above, the County Defendants' motions to exclude the testimony of Dr. Khan [Doc. 51] and the testimony of Mr. Harmening [Doc. 55] are **DENIED**. The City Defendants' motion to exclude the testimony of Dr. Khan [Doc. 57] is also **DENIED**, and their motion to exclude the testimony of Mr. Harmening [Doc. 58] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge